Good afternoon. Illinois Appellate Court First District Court is now in session. The First Division, the Honorable Justice Aurelia Puchinski presiding, case number 19-0215, People v. Timothy Bunn. Good afternoon. You see on your screen with me my colleague, Justice Mary Ellen Coughlin. I regret that Justice Michael Hyman cannot be with us today, but he will listen to the oral audio and he of course has read the brief, all of the cases and the records. So he's very well prepared to discuss this case with us when he is available tomorrow. In the meantime, if you could please introduce yourself to the court, please. The Appellant Attorney, please. I'm Abigail Elmer with the Office of State Appellate Defender representing Timothy Bunn. Okay. And the State? Good afternoon. Assistant State's Attorney Roderick Murrow for the People. Okay. Mr. Murrow, Ms. Elmer, we usually do this just like court. You have about 20 minutes each. The defendant can reserve some time for rebuttal and we will ask questions. Hopefully we won't get you too far off the path that you've chosen, but we will ask questions. And we're a little bit flexible on the times, but if you would like to begin Ms. Elmer, that would be great. Thank you. Good afternoon, Your Honors. My name is Abigail Elmer with the Office of the State Appellate Defender and I represent Timothy Bunn. I'd like to reserve three minutes for rebuttal. Okay. Thanks. The issue in this case is whether defense... Could you stop for a minute? I'm having trouble hearing you, Ms. Elmer. You sound kind of muffled or something. Maybe I'm the only one. Let me make sure I have this set correctly. The technology is great, but it has its glitches. We all understand that. Thank you. Is this any better or worse? Much, much better. But now I've got myself un-videoed, so I'm going to re-video myself and then we'll see what I'm doing. Okay. So we got it. Thank you. The issue in this case is whether defense counsel was ineffective for failing to file a motion to suppress the guns and drugs found in Bunn's jacket and Bunn's subsequent statements where they were the fruit of an illegal and improper inventory search. Bunn had been a passenger in a car that was pulled over, gave officers a fake name, and was subsequently arrested, along with the driver who had a suspended license. The car was driven by officers to a police station where they conducted a warrantless search and in the process found Bunn's jacket in the backseat. They searched the pockets and found two guns and illegal drugs. As an incident matter, Bunn did have a privacy interest in the coat sufficient to raise a Fourth Amendment challenge of the validity of the search and to move for suppression of the evidence. While a passenger in a car may not generally have standing to challenge the search of a car, they do have standing to challenge the search of property or containers in that car which belong to them, such as Bunn's jacket pockets. Oh wait, didn't you tell the police that wasn't his jacket? He did have an initial denial that the jacket was his. This denial only lasted 13 minutes and he then told officers that the jacket, he was lying, the jacket was his. This denial also didn't occur until after the search and was all a part of one conversation where during that conversation he admitted the coat was his. So the product of that conversation, contained conversation, was him admitting that the jacket was his. So that short... Can I ask a question? So you're not disputing that the actual tow and impoundment of the car was lawful, you're just complaining about the search of the jacket? The defense's position is that the towing and impounding was also unlawful, but whether or not the court finds that, the search was unlawful either way. Well how could we find it was unlawful given the fact that the driver was driving on a suspended license? People v. Clark, a case the Illinois appellate courts have considered before, has said that the court or officers must investigate whether there is a lawful driver to move the car and that impoundment is only proper if there was not a lawful driver or the car was illegally parked here. There was a lawful driver. The video body footage shows... Wait, wait, wait, wait, wait. Where in the record does it, assuming that we agree with that analysis, which I'm not sure if I do, but assuming that we do, where in the record does it say there was a lawful driver? It's on the body camera video. State's exhibit, let me tell you exactly, the state's exhibit shows the officers running the passenger's license and them saying he had a lawful, he was the owner of, this is the front seat passenger, was the owner of the car and had a legitimate license. He was driving on a suspended license. The driver was. The passenger in the car, another passenger in the car, owned the car and had a non-suspended license. But where in the record was that introduced at trial is my question. It's state's exhibit one, I believe, is the one that shows it. I am not sure that that was played at trial, but the video was admitted. I mean, you kind of have a problem given the fact there was no motion. I understand that, but we're bound by the record and I'm sure you appreciate that. Yes. And so even if the impoundment was proper, the search of the car was still illegal as Officer Florek stated that he searched the car for drugs and weapons. And so despite whether the impoundment of the car was proper, a motion could still have been filed on that statement for suppression of the evidence and had that motion been filed. But don't the police, however the car is taken by the police, whether it's driven by the cop or towed or whatever, however that's done, the search is done before that happens. An inventory search happens before the car actually leaves the site. And that's for the protection of the police and anybody else who has to handle the protection is to make sure that there are no guns that are going to go off or hand grenades or, God forbid, something else that's going to go off while the car is being towed away. So why wouldn't the police have the right to do that search? No matter what it's called, they have the right to look for anything that's dangerous. Correct, Your Honor. But the search did not happen before the car was moved from the scene. Instead, it did not happen until Officer Florek drove it himself to the police station without checking for guns, without doing any sort of inventory search. It did not happen until later, taking away the purpose of an inventory search, as you said, to protect police from accusations of impropriety or danger. This instead was done incorrectly, not towed to the police station and done after that had occurred, making this clearly a pretext to actually conduct an investigatory search that there was no probable cause for. And why was it done improperly? What are you relying on in making that statement? We cited Chicago Municipal Code Section 98240, which says that the police officers shall provide for the towing of the vehicle, along with Chicago Police Department Special Order 70306, which also says that the vehicle should be towed to a police facility. These ordinances and orders only contemplate towing. There is no... I'm sorry, Justice Kagan, go ahead. It was taken to a... So your problem is that they should have called at the scene and had the car towed instead of driving it to the police station? Is that what your objection is? That is one of the issues, yes. As an officer driving it himself does not go with the standardized police procedures, South Dakota v. Opperman, the United States Supreme Court case, also talks about how the purpose of an inventory search must be to protect police from danger and from claims of lost or stolen property, which them towing it themselves does not tell. So there was no motion about the problem with the towing or how the car got to the district. Your real problem is that the search was done after it got to the district. And what case law or what rule do you have or what code do you have that says the search has to be done before at least to get to the police station or the city inbound lot or where it's going to go? There's no case that we've cited that specifically says the search must be done before it's towed to the police station, but given... Before it leaves the site, it's at the site, what says you have to do the inventory search before it takes off, before you take it away? What are you looking at? There's no case that says that specifically, but the Opperman case that gives the purpose of a search, it defeats the purpose to do it later. But there is no case that specifically says it has to be done before it is taken away. But even if all of the doing the search after it got to the police station was proper, it was still an improper search where the officer's intent was to search the car for guns and weapons and drugs and contraband instead of for a proper inventory search. It made it... Isn't that an assumption? Isn't that speculation on your part? Officer Florek testified at trial that their purpose for the search was for drugs and weapons. That's the only... Isn't that a proper purpose? Not for an inventory search, Your Honor. Was to leave guns and drugs in the car? They can search for officer safety, but not in order to find, just with the purpose of finding contraband. It's not the proper purpose of an inventory search. It makes it a pretextual search. There's nothing in the record that I saw where the officers are making that statement that they're searching for the pretextual reason of finding contraband. On the supplemental report, the transcript, page 19 and 20, is where officer... I believe it's 19 and 20, is where officer Florek says they search for drugs and weapons, which is not... Florek also said the first part of that sentence was officer Florek left the car at the police station and the officers did an inventory search of the vehicle back for any drugs and weapons. So, sort of combining the two purposes. I don't... We have to keep meeting the dead horse, but we don't really have a record here of what their procedures were and what they did. Isn't this stuff that really would have been brought out in a motion, if a motion had been filed? It is, which is why counsel was ineffective. We don't have... The motion would have been meritorious. And again, I recognize you're in a bit of a bad position here, given this record, but again, we're bound by the record. Yes, your honor, but... How do you make that showing based on this record? What are we supposed to rely on in concluding that this search would have been meritorious? What facts? That officer Florek... This motion, I'm sorry, I misspoke. The motion would have been meritorious. That officer Florek said that the police searched based on looking for drugs and weapons. It's an improper reason to conduct an inventory search. And had just given that the motion would have been meritorious as this was an illegal search, it was warrantless. There was no other reason to search the car other than an inventory search. He said it was, but he said it was an inventory search. We did an inventory search for, and then a couple of phrases later, for guns and weapons. Yes, he did say it was an inventory search, but the purpose is what they actually search for. Description of the search is more important as even though he called it an inventory search, it wasn't truly an inventory search, but instead an investigatory search to try to find contraband in the car. And the inventory search must be, according to the Opperman case, must be in good faith. So here the reason does matter for the search, not just him describing it as an inventory search. Also, just in regards to the state's response and emergency motion on whether Mr. Bunn has a privacy interest to challenge the search, is also wanting to address whether the state's contention that he abandoned the coat by leaving it in the back of the car. Property is typically considered abandoned when a defendant discards it, often when fleeing from police with no apparent intent to retrieve it. But merely leaving your possessions behind when stepping out of a car at law enforcement's request is not abandonment. There are cases the appellate courts have considered where a vehicle passenger left her purse behind in a car while she stepped out to speak with police. The police subsequently searched the car and found cocaine in the purse, and the court found the defendant did not abandon her purse by leaving it in the car. She did not assume the risk that it'd be searched. This is much like the case here where Mr. Bunn left the coat in the back of a car where there were three other passengers. There's no evidence he knew he was going to be arrested or that he didn't think he would be returning to the car to retrieve the coat. Okay, I want to go back to the search for a minute. There was another officer though who did testify that it was an inventory search. So the court had two officers, one saying only an inventory search and the other saying inventory search dot dot dot guns and bolts. So this is what the court's hearing, right? Yes. The officer Spikuzza, who's the other one who said it was an inventory search, didn't go into any more detail. He said what was found, but for their reasoning for the search, didn't go into any more detail. Was the inventory actually provided to the defendant? Yes, there was an inventory search. They didn't just stop with the guns and drugs. They included black jacket, purse, comb, whatever else was in the car, right? Yes, your honor. Okay, so they didn't stop. Once they found the guns and the drugs, they didn't stop. They kept going with an inventory search. Is that correct? Yes, but the purpose here does matter, even though they say they were doing an inventory search and they did inventory the car as well. The way the case law is written, it specifically says that the search has to be within good faith. And so even saying it was an inventory search that they may have been allowed to do, they still did not do it for proper reasons, which makes it an illegitimate and warrantless search. The purpose here of the search does matter. And all we have to go off of is the officer's testimony, where one of the officers testified that it was for an illegitimate purpose of searching for contraband. And had counsel filed an appropriate motion to suppress, it would have been granted. And the state would not have been able to prove fund guilty beyond a reasonable doubt, because the guns, the drugs, and the statements he made later to police would have been suppressed as fruits of an illegal search conducted by the officers. If the court doesn't have any other questions, I would ask that this court reverse funds convictions outright, or reverse funds convictions and remand for a suppression hearing. Thank you. Mr. Morrow. Thank you. May it please the court. Again, I'm Roderick Morrow. I represent the people of the state of Illinois in this matter. Trial counsel cannot be ineffective for not filing a defense. There's no deficiency in trial counsel's performance, because the defendant had no legal basis to challenge the search of the vehicle or the jacket where the vehicle was found. And he does not have, specifically, to narrow the point, a basis to challenge the search of the jacket, which he either one, does not own, or two, abandoned at the time that the jacket was searched. Mr. Morrow, why doesn't he have a basis to challenge the search of the vehicle and the impoundment of the vehicle? Yes, Your Honor. Based off the facts presented at trial, as well as the facts that counsel knew at the time of the trial, the defendant had no legitimate expectation of privacy in the vehicle, not at all. He had no way to stop someone from entering or exiting the vehicle. He did not have the keys in his pocket. In fact, the facts of this case show that the defendant himself was in the back seat in the middle of the car, in the middle rear of the car. So at no point was it ever stated or ever brought into evidence by the state that the defendant was an actual owner to that vehicle. And what is the significance of the fact that the driver is driving on a suspended license? Well, Your Honor, the significance of that is, one, the reason why the vehicle was impounded in the first place. That's how we get to the inventory search that occurs later. Well, wait a minute. The city code only says it can be told if some other person in the car is unable to drive it away. I'm hearing that the true owner who had a license was the actual owner of the car. Why didn't they just say, hey, take this car away from here? We're taking this with us. You take the car. Yes, Your Honor. So with the issue with the person who had a actual driver's license, it was confirmed. I'm seeing that at least one person, I believe it was the front passenger person, who says he was the owner of the car. He says he was the owner of the car. I don't believe that was ever determined that he was the actual owner, because it is based off the facts. Everyone in that car was being untruthful with officers about the entire situation that was happening, the different situations. So I don't believe that the officers could determine that his statements were truthful, being the fact that in the body cam footage, he says that... When they ran the plate, they found out the name of the owner of the car, and then they found out the front passenger's name was that same name, right? That is not clear based off the actual body cam footage that I have seen, Your Honor. That could be the case. However, officers at that time felt as though they had the authority at that point to say that this person allowed someone else to drive the car who was driving on a suspended license, as well as multiple different stories being thrown around between the different five people that were in the car. So trying to observe the believability of each person might have been at that officer's discretion when she chose not to allow that person to drive the car away from the scene. But no privacy interest in the car. What about the privacy interest in the jacket that he said wasn't his and then said was his? Yes, Your Honor. So, and again, as to the legitimate expectation of privacy in the jacket, he either, one, does not own the jacket, because based off his own statement during his interview, the jacket's not mine, what jacket? He says that over the course of 13 to 15 minutes to the officer, yes, to Officer Schultz at that time. So at that point, he takes the jacket off without ever being asked. No one ever asked the defendant to take off the jacket, but he takes it off himself. He also says that the jacket belongs to another person in the car, and his actual jacket was the blue jacket that someone else was wearing. So at that point, he shows that the jacket is not his. So if he has no legitimate interest in that jacket as being his own, one, that he can tell people that you can put it on, you can take it off, you can borrow it, you cannot borrow it, or prior use, he has no legitimate expectation of privacy in that jacket. But later he said in that same interview, it was his jacket. Yes, Your Honor. So a part of that is this defendant says so much over this 30-minute interview that officers, I'm sorry? A 13-minute interview, Your Honor, in its totality, that 13-point, marked point, 13 to 15 marked point is the part where he starts denying. So for about 13 to 15 minutes, he's denying that the jacket is in fact his. Then around the 15-minute mark or so, he goes on to say that he just starts, and I would express to the court, he never actually legitimately says, this is my jacket. He's just pretty much a tacit acceptance of what the officer was saying to him. The officer said, it's your jacket, and he starts saying that the other people were putting the guns and the drugs in my pocket. So there are many different cases that explain that when someone is essentially saying that they're expressing some intent in the jacket. So him even saying they were putting in my, putting the guns in my pocket shows no intent that he was saying that the jacket is his. Your Honor, we have cited multiple cases like people be handling, as you all may have seen on the emergency brief, where we have shown that there must be a little more than a, oh, the jacket is yours to show, or the jacket is mine. There must be some actual manifestation to show that you actually show some interest in the jacket. This defendant, however, showed no manifestation, no interest in the jacket. In fact, the defendant says it's not his for over the course of 15 minutes. So at the 13-minute mark, are we then to believe him? Because at that point, officers could have connected the jacket to the defendant just by their interaction on the scene that would have confirmed that conviction without him saying so. They saw him with the jacket, and they found the jacket with the guns in it. There was no manifestation like you see in people be handling, or as the appellate public defender has stated in people be James in their brief, where the defendant had a purse, and she showed some type of manifestation that saying on the scene, that's my purse that you're searching. She says that she has some interest in the jacket. However, this defendant, yes, your honor? They searched the purse and the jacket on the scene or at the station? No, they searched the jacket at the station. However, in people be James, which is cited by the defendant, there is a defendant whose purse was searched without consent that I believe Ms. Elmer was speaking to earlier in the first part of her case. And on that case, the court found that case mainly addressed whether someone else's consent can manifest the defendant's consent. However, that's not the issue in this case. But even further than that, that court showed that the defendant never gave up her possessory interest in the purse, because while on the scene, she states, that's my purse, the contents within that purse is mine. This defendant does not do that. He effectively takes off the jacket without being requested. Only thing officers asked the defendant to do in this case was step out of the car. Now, I would ask your justice to pay close attention to the situation at hand. This is March, it's cold, he just takes off the jacket. He's abandoning it, because he knows what's inside it. So therefore, he shows an attempt to get rid of it. He doesn't want anything to do with it like the other cases that the opposing counsel points to, like People Be Young, a case in which the defendant's suitcase was searched in the trunk of a car. However, when officers found marijuana in that, however, in that case as well, there was a manifestation that the item searched belonged to the defendant. There again is no no actual words that he say that that's mine. I agree that that jacket is mine. He even tells officers, Officer Schultz during the interview, that's not mine. If it was mine, why aren't my other things in there? I had four credit cards. There's nothing in there that belongs to me. That is what this showing that this defendant makes. So that's where we go to saying that this defendant has no legitimate expectation of privacy in a jacket that one, he does not own, or two, he abandons. So and I think counsel also points to a case of Novikovsky, in which a backpack was searched when a defendant puts it down. And counsel also states to there has to be some form of fleeing. Well, Your Honor, we do not have fleas, just as I submit that we do not have in this case. But putting something down on the ground as the court in Novikovsky states, it's also a part of abandonment. Now, it's not the jacket is not being put on the ground. However, putting it without provocation, away from yourself, distancing yourself physically and verbally and showing that you do not want anything to do with the jacket is akin to abandonment in this case. So although there's no fleeing, or there's no significant distance that the defendant makes outside of officers asking him to step out of the car, putting it in the leaving it in the car where other four individuals were sitting is akin to abandonment without provocation. Also, Your Honors, just to finally make it clear, we have cited to people be handling the facts of this case are similarly, similarly, similarly situated, excuse me, to people be handling, and where the defendant, in that case, physically abandoned his coat by attempting to put on the coat that he brought that had drugs, as well as a court document inside were not hit. However, I mean, excuse me, similarly, in this case, this defendant tries to tell the officer that his coat belonged to someone else. And the coat that he had on was not his. So that goes to show the coats not his, or he abandoned it and people be handling the court found abandonment, where you buy your words, as well as your physical actions show that you have no possessory interest, you have no legitimate right expectation of privacy in the item or objects you see to have suppressed. These are what's he said? Yep. And during the during the question at the station, at the site, but at the station, oh, by the way, that was my coat. Wasn't that didn't that create the expectation of privacy? Why wouldn't we follow you? No, Your Honor, I will submit that it does not create that expectation, that legitimate expectation of privacy, because it goes to the legitimate expectation of privacy interest that officers would have known about at the time of the search. So it goes under the totality of circumstances, when what the officer knew at the time, and at the time during the search, all the officers had let's follow the jacket on site. He said on site, it's not my jacket, he took it off, no expectation of privacy, he gets to the police station, officer for it back to the police station. I don't think we know if it was at the same time, hours later, minutes later, whatever. So there's a search going on in the car at the station, not instantly at the city pound or someplace like that. It's at the police station, there's a search going on. And during this whole sort of at the station period of time, cars at the station, guys at the station, he says, wait a minute, that's my jacket. So you can't really say that the officers didn't know he was claiming that he owned that jacket, you can only say, you might be able to say, although I didn't see it in the record, that the officers were searching the car, whenever that was, I'm sure it wasn't in the same room, it was in a garage somewhere, probably. They might not have known that he said, oh, that's my jacket. But then you have to wonder, didn't the officer who was questioning him have some sort of obligation just to pick up the phone and call the search team? Hey, the guy's claiming he owns that and he says, yep, it's my jacket. And some, along that continuum, they're searching the car, I had to finish searching the car, there's nothing in the record that gives us this timeline. So we don't really know whether they did know or they didn't. Assuming that once one cop knows something, all cops know something, we don't really know what the timeline is. Isn't that something that's missing from the state's case? Well, Your Honor, I will submit that based off the video, I can't speak to, as far as the record that is not there in the record, how, at what point did they know that the guns were, I mean, the guns were in the jacket, but during the interview that was put into the record at State's Exhibit 2, Officer Schultz confronts the defendant with the jacket and its content during the interview. So the timeline is, he says it's not mine, ultimately it gets searched at the station, the gun and the drugs are found, Schultz goes back in and says, hey, what about this? And the guy says, yeah, it's my jacket. So that's the timeline, is that right? Yes, Your Honor. However, I'm not completely sure as to whether he says it at the scene. His physical manifestations at the scene show abandonment that that's not my jacket. He never shows an intent to go back for the jacket. Well, I have not have an exact timeline, but we do have a sequence of events, so that's correct. Yes, Your Honor. So essentially, the argument here is that his physical manifestations show that this is not my jacket. I don't want anything to do with that jacket. At the time, officers merely asked him to step out of the car. They asked him to do nothing more than that. He just takes the jacket off himself. Then we get to the actual police station where, as on body wearing camera, it seemed to appear as though they had already searched the jacket. So under the totality of the circumstances, what the officers knew at the time that the jacket was searched was that defendant didn't want to have anything to do with the jacket that they found in the car, which does actually show abandonment under People v. Hammer. I'm sorry. What? No, Your Honor. I thought you were speaking, but if the court has no further questions, we ask that this honorable court confirm the defendant's conviction. I have no questions. Thank you. Yes. I think what's important here is what the state was stressing, what the officers knew at the time of the search. There is nothing in the videos that were played at trial or no suggestion from the officers that on the scene, Mr. Bunn denied the jacket was his. No denial was mentioned until after the search during the interview at the police station. So they knew at the time of the search was that he had left the jacket in the car, a car there's no evidence that he thought he wouldn't be going back to where there were still other people he knew in the car. There was no suggestion that he abandoned the jacket for those reasons. And he had, there's no evidence he had, he had denied the jacket was his at that time. The denial did not come until later during the police interview. And this was only 13 minutes. It was all within one conversation where at the end, he admitted he was lying. He owned up to that and said that he said he was lying. And the implication was the jacket was his, he said people have been putting things in his pocket. At no time in that interview, after that denial, did he, after saying he was lying, did he then again deny the jacket was his? The last part of that conversation was him admitting the jacket was his. Would you agree that you have a pretty big at a minimum, significant issue of fact concerning whether or not he's abandoning this jacket? It's not a slam dunk that he's not like some of these other cases that we're talking about here where the guy never waivers, it's my guy, unasked by the police, takes off the jacket, leaves it in the car, gives it to, leaves it in a car with at least three or four other people in it. Never says anything at the scene about, you know, I want to get my jacket, that's my jacket. And really basically doesn't say anything until he's confronted with the fact that there's contraband found in the jacket. So at a minimum, you've got some questionable issues of fact. My point is that's really not a slam dunk motion, is it? There are some facts that need to be discussed, such as the denial that comes later, but I don't, him leaving it in the car doesn't suggest abandonment. He cooperated when officers asked him to get out of the car and just left the jacket behind. There's nothing in evidence to say there was reason he left the jacket behind or that they asked him to bring it out of the car and he didn't. I don't, this doesn't suggest abandonment. And had this motion been raised and these issues come out, there's a, the court would have seen this and granted the motion as well. What's your best case for that argument? The case people versus James people versus James where the defendant left her purse in the front seat of the car. She was also a passenger. It's she, but she left her purse when she walked out to speak with officers. And that was searched. This is similar, just a piece of personal, a personal item that was left behind in a car that someone, no evidence suggests they didn't intend to return to. This is a similar situation to that case where the court found she still had standing to, she didn't consent to the search and still had standing to object. And though she on the scene said the purse was hers and there's no evidence funds that the jacket was his on the scene. He didn't deny the jacket was until after the search actually occurred. And just so that I'm clear, you do or you do not believe that the inventory search was lawful? I do not believe the inventory search was lawful. Yes, but did you think it was pretextual? Yes, Your Honor, for the purpose of searching for did not have to be impounded. I also thought I wanted to let your honors know that was States Exhibit 1 at minute 2303 is when officers are running the front seat passengers license and say he's the registered owner of the car and have as a. So are you saying officers have no discretion and that any time under facts like this, that there's someone that has a valid license that they are required under law to let a person who possesses a valid driver's license drive away a car under these circumstances? No, Your Honor, officers do have discretion. The municipal code that I cited in the brief says that the car shall be impounded, which shows that there is discretion here. But given the facts that the car was, well, I think that kind of shows that it has to be impounded, doesn't it? Another case this court's or it was the in a different municipality, but the Illinois courts decided was that the shall be impounded was actually discretionary language. That was people versus Puritan, I believe. That but even if the car, so because the car was seemed to be legally parked, there were no parking signs, it seemed to be parallel to the curb. And there was someone else. Our position is that we don't know. We don't know. We don't know any of that. It can be seen on the body camera videos, but it's not in the transcripts. That's correct. We don't know how the cars parked. We don't know if it's legally parked. We don't know what the parking restrictions are. We don't know any of that. That is why one of our alternative ask for relief is that a suppression hearing be held because there are some facts that just aren't known, but they seem to point to that a motion to suppress this evidence would have been granted. No matter, you've already said that there was no motion in the record about the towing. Nobody brought up the towing in the trial court. So why are we even paying attention to that? No, it wasn't brought up in the trial court, but it goes against the purpose of an that the officers really weren't searching in good faith because if they were actually concerned about their safety, about being protected from claims of impropriety, they would have searched beforehand and they would have had before the car was moved and they would have had the car towed as everything suggests they should have instead of driving the car. One of the officers driving the car alone on his own where he didn't know what was in the car and no one else did either. And so that just goes to show that this was a pretextual search. And if there are no other questions I would ask this court, just again, reverse Mr. Bunn's conviction or remand this for a suppression hearing. Thank you. Thank you both for your excellent arguments, your excellent briefs. This court will take this quick case under advisement and we'll issue an order in the coming weeks. And in the meantime, this case is over and the court is adjourned.